

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**FACTUAL BASIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 13-279** |
| **v.** | * | **SECTION: "E"** |
| **ANDREA BIRDOW** | * | |

* * *

The defendant, **ANDREA BIRDOW** (hereinafter, the "defendant" or "**BIRDOW**"), has agreed to plead guilty as charged to the Bill of Information currently pending against her, charging her with violating Title 18, United States Code, Section 371, by conspiring to violate Title 18, United States Code, Section 1591(a). Should this matter proceed to trial, both the Government and the defendant, **ANDREA BIRDOW**, do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crime to which the defendant is pleading guilty. The Government and the defendant further stipulate that the Government would have proven, through the introduction of competent testimony and admissible, tangible exhibits, the following facts beyond a reasonable doubt to support the allegations in the Bill of Information now pending against the defendant:



## Introduction

The Government would show that, at all times mentioned in the Bill of Information, the defendant, **BIRDOW**, was an adult female who resided in the Dallas, Texas area.

The Government would show that, at all times mentioned in the Bill of Information, **Minor Victim 1** was a juvenile female who was born in about January 1997, and who resided in the Mesquite, Texas area.

The Government would present eyewitness testimony and documentary evidence that **BIRDOW** met **Taurean Okeith Jackson (a/k/a "Marvelous Rich," a/k/a "Richard Jones," a/k/a "Richard Marvelously")** (hereinafter "**Jackson**") in about 2012 in the Dallas, Texas area. **Jackson** recruited **BIRDOW** to join "Star City Vixens," an entity he created that purported to be an escort agency but that was, in fact, a front for prostitution activity. **BIRDOW** soon agreed. **Jackson** then became **BIRDOW'S** pimp and arranged for her to engage in sexual acts with others in exchange for money. Jackson kept all, or most, of the proceeds from **BIRDOW'S** sexual acts.

The Government would further present eyewitness testimony and documentary evidence that **Jackson** created advertisements on an online classified ad service commonly used to advertise sexual services in exchange for money, through which **Jackson** received telephone calls inquiring about, scheduling, and arranging prostitution calls with **BIRDOW**. **Jackson** scheduled the time, location, and other logistics of each prostitution date.

The Government would further present eyewitness testimony and documentary evidence that as a means of controlling **BIRDOW'S** behavior and ensuring her compliance with his instructions, as well as the compliance of other prostitutes under his control, **Jackson** beat and choked **BIRDOW** on multiple occasions, often in front of others. On several occasions, **Jackson**



burned **BIRDOW** with lit cigarettes as a means of disciplining her.

**Minor Victim 1**

The Government would present the testimony of eye witnesses and, further, introduce recorded statements and documentary evidence that in about June 2013, **Jackson** and **BIRDOW** met **Minor Victim 1** in the Dallas, Texas area. Shortly after their meeting, **Jackson** and **BIRDOW** jointly recruited **Minor Victim 1** to begin working for **Jackson** as a prostitute. As with **BIRDOW**, **Jackson** required **Minor Victim 1** to turn over all, or most, of the money she earned from prostitution to **Jackson**.

The Government would present eyewitness testimony that **BIRDOW** and **Jackson** discussed the fact that **Minor Victim 1** was, in fact, a minor.

The Government would present documentary evidence and eyewitness testimony that **Jackson** and **BIRDOW** drove **Minor Victim 1** throughout Texas and Louisiana, including to Fort Worth, Texas, San Antonio, Texas, Austin, Texas with the intent that **BIRDOW** and **Minor Victim 1** engage in prostitution acts. **Jackson** scheduled the time, location, and other logistics of each prostitution date with **BIRDOW** and/or **Minor Victim 1**.

The Government would further introduce recorded statements and elicit testimony from eyewitnesses that, at first, **Jackson** arranged for **Minor Victim 1** to watch **BIRDOW** engage in prostitution acts with clients as a means of educating **Minor Victim 1** on the best way to perform sexual acts.

The Government would introduce eyewitness testimony that **Jackson** and **BIRDOW** provided **Minor Victim 1** with alcohol and/or illicit and mood-altering drugs, including marijuana to numb her senses, control her behavior, and/or to encourage **Minor Victim 1** to engage in acts of



prostitution.

**Coming to New Orleans**

The Government would introduce documentary evidence, including cellular phone records and online classified advertisements, that on about July 7, 2013, **Jackson** and **BIRDOW** drove **Minor Victim 1** to the New Orleans, Louisiana area to work as a prostitute. From on or about July 7, 2013, through on or about July 10, 2013, at **Jackson's** direction and supervision, **BIRDOW** and **Minor Victim 1** worked in the New Orleans, Louisiana area as prostitutes.

The Government would introduce documentary evidence, namely hotel records and cellular telephone records, as well as eyewitness testimony that on about July 7, 2013, **Jackson** and **BIRDOW** rented a hotel room in **BIRDOW'S** name at a hotel located in Metairie, Louisiana, for **BIRDOW** and **Minor Victim 1** to use for their "in-call" dates arranged by **Jackson**.

The Government would also introduce eyewitness testimony that on at least one occasion **Jackson** beat **Minor Victim 1** across the legs and buttocks with an extension cord. Furthermore, **Jackson** beat and choked **BIRDOW** in front of **Minor Victim 1** and told **Minor Victim 1** that he would do the same to her if she tried to leave him.

Detectives with the Jefferson Parish Sheriff's Office, as well as Special Agents with the Federal Bureau of Investigation (FBI) would testify, and documentary evidence would be introduced to show that on or about July 10, 2013, law enforcement agents identified an advertisement for suspected prostitution services posted on an online classified website. The advertisement was entitled ""GORGEOUS-CURVES-SEXXY-GIRL NEXXT DOOR-25," and bore Post ID Number 7960316. The advertisement stated that the female "date" was "ready and more than willing to fulfill all of your erotic needs and desires." A law enforcement official,

VWJ
AB
JSG

acting in an undercover capacity, arranged a prostitution "date" to take place at a hotel located in Metairie, Louisiana, by contacting (214) 735-5277, the telephone number listed on the advertisement.

Detectives with the Jefferson Parish Sheriff's Office and Special Agents with the FBI would testify that on about July 10, 2013, law enforcement officials arrived at the hotel located in Metairie, Louisiana where the undercover prostitution "date" had been scheduled, and arrested **Minor Victim 1** and **BIRDOW**.

The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, Special Agents from the FBI, Detectives from the Jefferson Parish Sheriff's Office, other witnesses, documents and electronic devices in the possession of the FBI, and statements made by the defendant, **ANDREA BIRDOW**.

**APPROVED AND ACCEPTED:**

ANDREA BIRDOW
Defendant

9/24/14
Date

VALERIE WELZ JUSSELIN, ESQ.
(Louisiana Bar No. 19825)
Attorney for Defendant Birdow

9-24-14
Date

JORDAN GINSBERG
(Illinois Bar. No. 6282956)
Assistant United States Attorney

9-24-14
Date